IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JOSEPH BENJAMIN THORN, | § | |
| | § | |
| Petitioner, | § | |
| v. | § | CIVIL ACTION NO. 16-1323 |
| | § | |
| LORIE DAVIS, | § | |
| | § | |
| Respondent. | § | |

## MEMORANDUM AND ORDER

The petitioner, Joseph Benjamin Thorn, filed a petition under 28 U.S.C. § 2254, challenging his 2013 conviction for evading arrest and 35-year sentence enhanced based on his habitual offender status. The respondent answered and moved for summary judgment, and Thorn responded. (Docket Entry No. 33, 39). Based on the pleadings, the motion and response, the state-court record, and the applicable law, this court grants the respondent's motion for summary judgment, denies Thorn's § 2254 motion, and enters final judgment. The reasons are set out below.

### I. Background

#### A. Procedural Background

Thorn was convicted of evading arrest. *The State of Texas v. Joseph Benjamin Thorn*, Cause No. 135764901010, in the 174th District Court of Harris County, Texas. In September 2013, the judge imposed a 35-year sentence, reflecting an enhancement for habitual-offender status. Thorn appealed, without success. The appellate court modified the judgment to show that Thorn pleaded not guilty to the offense but true to the enhancement allegations, and removed language stating that Thorn had waived appeal and that leave to appeal had not been granted. *Thorn v. State*, No. 01–13–00906–CR, 2014 WL 3512811, at *7–8 (Tex. App. – Houston [1st Dist.] 2014, pet. ref'd).

Thorn's petition for discretionary review was refused in November 2014, *Thorn v. State*, PDR No. 1128-14 (Tex. Crim. App. 2014), and his state habeas application was denied without written order in September 2015. Thorn timely filed this federal habeas suit.

**B.     Factual Background**

The Houston Court of Appeals summarized the facts in its opinion, as follows:

> The complainant, Artemio Pariona, testified that on August 14, 2012, while he was resting in his bedroom and his daughter was resting in her bedroom, he heard tires screeching loudly and then the impact of a car hitting his home. The complainant "suddenly . . . felt the impact from behind [his] bed," and he was "pushed . . . to the wall." He felt his legs and back breaking, causing him severe pain, and he could not breathe. The complainant then lost consciousness, and he remained unconscious in a coma for two months.
>
> The complainant further testified that he has since had seven surgeries, and he is disabled. As a result of the collision, his knees were broken, his ribs were broken, his spine was injured, one of his legs remains completely numb, he cannot lift anything, and cannot walk very well or run. The complainant no longer has the normal use of his legs, and he cannot bend his back.
>
> Houston Police Department ("HPD") Officer M. Alva testified that on August 14, 2012, he was dispatched to investigate a "911 hang-up" call placed from a coin-operated telephone at a shopping center at Long Point Road and Wirt Road. He was wearing his police uniform and drove to the location in his patrol car, which was marked with police emblems and had overhead lights.
>
> Upon his arrival, Officer Alva noted that there were two coin-operated telephones in the shopping center. He drove to the first phone, but "[n]o one was around." He then drove to the second phone, where he stopped his car, and two women ran towards his car. Alva rolled down his window, and the women pointed to a Nissan car, which was parked perpendicular to the other cars in the parking lot. They told Alva: "That man is breaking into that car." Alva told the women to wait there, and as he proceeded to make a u-turn in the parking lot, the Nissan "screeched off through the parking lot." Alva then activated his emergency equipment, which consisted of a siren and overhead flashing red, blue, and white lights, and the Nissan exited the parking lot. Alva explained that he intended to detain the individual in the Nissan to investigate.
>
> Officer Alva pursued the Nissan eastbound on Long Point Road, and, at one

point, he was about two car lengths behind the Nissan with his siren and lights activated. However, the driver of the Nissan did not pull over and stop for Alva. Rather, the driver of the Nissan "accelerated to a high rate of speed" and weaved the Nissan in between and around other cars. The driver of the Nissan then made a left turn onto Antoine Drive and headed north in front of oncoming traffic, causing several cars to come "to a screeching halt," blocking Alva's path.

Officer Alva explained that the driver of the Nissan drove in a "[v]ery erratic" manner, "at a high rate of speed," and he was "weaving in and out of traffic." Alva opined that the driver of the Nissan drove at approximately 60 miles per hour on Long Point Road and then accelerated to a minimum of 80 to 90 miles per hour. He noted that the posted speed limits on both Antoine Drive and Long Point Road were 35 miles per hour. Alva maneuvered his car around the stopped cars at the Antoine Drive intersection and continued his pursuit, following the Nissan northbound on Antoine Drive. At a point where there is a turn in the road, Alva lost sight of the Nissan, but he continued driving.

As Officer Alva continued in pursuit of the Nissan, he noticed people standing on the side of the street, waving at him, and pointing him to a house. When Alva slowed down and looked at the house, he realized that the Nissan was buried inside the house.

Officer Alva approached the Nissan, noted that it was still running, and saw appellant inside the Nissan. The "lady of the house" was screaming that her husband, the complainant, was trapped underneath the Nissan. Alva could not see the complainant, and he could not get to the front of the Nissan where the complainant was trapped because the Nissan "was wedged inside of the house between the walls that had collapsed down on top of the [Nissan]." He did hear the moans of the complainant, who sounded like he was in pain.

Because of the manner in which the Nissan was wedged into the house, Officer Alva could not open its doors, and its windows were closed. After Alva and another officer broke one of the windows, Alva saw appellant upside-down in the passenger's floorboard. Alva told appellant to crawl towards him and the other officer, and once appellant was within his reach, Alva and the other officer helped him out of the car and arrested him. Alva did not see anyone other than appellant in the Nissan.

Officer Alva opined that the Nissan went off the road at a turn on Antoine Drive, struck a curb, and then went through a chain-link fence and into the house, where it knocked the complainant's daughter off of her bed and pinned the complainant, who had been lying in his bed, under it.

Appellant testified that on August 14, 2012, he met a friend "off of Long Point and the Antoine area at the Fallas Paredes" to shop. After leaving the store, appellant proceeded to walk to the car in which he had come to the store, a 2011 Nissan Altima, which was parked in front of the store. He got into the car and left the parking lot of the shopping center. Appellant then proceeded along Long Point Road, driving "the same speed limit that every other car was going."

Appellant explained that when he turned onto Antoine Drive from Long Point Road, he did not see a police car behind him, did not see any lights behind him, and did not hear any sirens. Appellant drove up Antoine Drive, and at the next intersection, he looked in his rearview mirror and saw an "HPD patrol car with its lights on run [a] red light and run into a civilian's car and hit a car." Appellant "kept proceeding to go because there [were] other vehicles behind [him]; . . . as [he] proceeded to go up Antoine, th[e] HPD officer . . . started coming in the direction that [appellant] was traveling in. [However, the officer] never got behind [appellant] exactly to the point where [the officer] was right behind [appellant]." Appellant "noticed there was an officer behind several other cars but not behind [him]."

At the next intersection, another car ran through a red light, or a stop sign, and hit the rear end of the passenger's side of the Nissan. This caused appellant to lose control of the Nissan, and he did not "know what happened after that because [he] was unconscious at the wheel." Appellant explained that he did not intentionally flee from the officer, but he admitted that he had driven the Nissan approximately 60 miles per hour while on Antoine Drive. He noted that he "kind of looked back to see if there was someone behind [him] that probably was an officer or something."

*Thorn*, 2014 WL 3512811, at *1-3.

## II. The Claims and the Applicable Legal Standards

### A. The Claims for § 2254 Relief

Thorn makes the following claims for relief, with repetitive claims combined:

1. He received ineffective assistance of trial counsel because his attorney

    a. failed to conduct a proper investigation into additional witnesses or video evidence;

    b. failed to move to quash the indictment because the habitual offender enhancements were void; and

  c.  failed to object to video evidence of the accident during the punishment phase of trial;

2. the State improperly amended his indictment to include a deadly weapon finding without providing sufficient notice;

3. Texas Penal Code 1.07(a)(17)(A)-(B) is unconstitutionally vague and overbroad; and

4. there was insufficient evidence to support his conviction.

Docket Entry No. 14 at 1-22; Docket Entry No. 31 at 1-6.

Each claim is analyzed under the applicable legal standards and in light of the record evidence.

  **B.** **The Legal Standards**

    **1.** **AEDPA**

Under 28 U.S.C. § 2254(d), a federal court may not issue a habeas writ for a defendant convicted under a state judgment unless the state court's decision "'was contrary to' federal law as clearly established in the holdings of" the Supreme Court, or "'involved an unreasonable application of'" clearly established Supreme Court precedent, or "'was based on an unreasonable determination of the facts' in light of the record before the state court." *Harrington v. Richter*, 131 S. Ct. 770, 785 (2011) (quoting *(Terry) Williams v. Taylor*, 529 U.S. 362, 412 (2000)); 28 U.S.C. § 2254(d). A state-court decision is contrary to established federal law if the state court "applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases," or confronts facts that are "materially indistinguishable" from a relevant Supreme Court precedent, yet reaches an opposite result. *Williams*, 529 U.S. at 405-06. A state court unreasonably applies Supreme Court precedent

if the state court correctly identifies the governing precedent but unreasonably applies it to the particular case. *Id.* at 407-09. To determine if the state court made an unreasonable application, a federal court "must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court." *Richter*, 1321 S. Ct. at 786.

"[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree'" about whether the state court correctly decided the constitutional issue. *See Richter*, 131 S. Ct. at 786 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)); *see also Woodford v. Visciotti*, 537 U.S. 19, 27 (2002) (federal habeas relief is merited only when the state-court decision is both incorrect and objectively unreasonable, "whether or not [this Court] would reach the same conclusion"). "It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Richter*, 131 S. Ct. at 786. If the Supreme Court has not "broken sufficient legal ground to establish [a] . . . constitutional principle, the lower federal courts cannot themselves establish such a principle with clarity sufficient to satisfy the AEDPA bar." *Williams*, 529 U.S. at 381.

Under AEDPA, a federal court presumes that the state court's factual findings are correct unless the petitioner rebuts the presumption "by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). "The presumption of correctness not only applies to explicit findings of fact, but it also applies to those unarticulated findings which are necessary to the state court's conclusions of mixed law and fact." *Valdez v. Cockrell*, 274 F.3d 941, 948 n.11 (5th Cir. 2001).

### 2. Ineffective Assistance of Counsel

Showing ineffective assistance of counsel requires a preponderance of the evidence that trial counsel's performance was deficient because it fell below an objective standard of reasonableness. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Clark*, 227 F.3d at 282. The defendant must show that his counsel made "errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. A federal habeas court "must indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Galvan v. Cockrell*, 293 F.3d 760, 764 (5th Cir. 2002) (citing *Strickland*, 466 U.S. at 689). The court "must strongly presume that trial counsel rendered adequate assistance and that the challenged conduct was the product of a reasoned trial strategy." *Wilkerson v. Collins*, 950 F.2d 1054, 1065 (5th Cir. 1992).

*Strickland* also requires a defendant to show prejudice from counsel's deficient performance. *Galvan*, 293 F.3d at 764. The defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "Even a deficient performance does not result in prejudice unless that conduct so undermined the proper functioning of the adversary process that the trial cannot be relied upon as having produced a just result." *Knox v. Johnson*, 224 F.3d 470, 479 (5th Cir. 2000) (quoting *Strickland*, 466 U.S. at 687). Alleging prejudice does not alone show prejudice. Failing to show either deficient performance or prejudice makes it unnecessary to examine the other prong. *Strickland*, 466 U.S. at 697. Both are required.

### 3. Summary Judgment

Summary judgment rules apply to federal habeas proceedings, but only to the extent that they

do not conflict with the habeas rules. *See Smith v. Cockrell*, 311 F.3d 661, 668 (5th Cir. 2002). Because state-court fact findings are presumed correct, under § 2254(e)(1), this presumption overrides the rule that factual disputes are viewed in the light most favorable to the nonmoving party. *Id.*

### III. Analysis

#### A. Thorn's Claims of Ineffective Assistance of Trial Counsel

Thorn argues that his trial counsel, Scott C. Pope, failed to conduct a proper pretrial investigation into additional witnesses or video evidence, failed to move pretrial to quash the indictment on the basis that the habitual offender enhancements were void, and failed to object during the trial's punishment phase to video evidence showing the car crash. (Docket Entry No. 14 at 4-10, 12-14; Docket Entry No. 31 at 1-6).

##### 1. The Claim of Failure to Conduct a Proper Investigation

Thorn alleges that his trial counsel "failed to conduct proper investigations into the facts of the case that would determine what trial strategies to take, but also what expert witnesses need to be called." (Docket Entry No. 14 at 4-10; Docket Entry No. 31 at 1-6). "[C]ounsel has a duty to make a reasonable investigation of defendant's case or to make a reasonable decision that a particular investigation is unnecessary." *Ransom v. Johnson*, 126 F.3d 716, 723 (5th Cir. 1997) (citing *Strickland*, 466 U.S. at 691). A petitioner must show how the investigation was inadequate by record evidence supporting a finding that additional investigation would have uncovered information that would have benefitted the defense enough to create a reasonable likelihood of changing the outcome. Similarly, a petitioner alleging a failure to call witnesses must "name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of

the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense." *Day v. Quarterman*, 566 F.3d 527, 538 (5th Cir. 2009).

Thorn alleges that his trial counsel failed to investigate the efficacy of the airbags in Thorn's car, interview medical personnel about the extent of Thorn's injuries, discover the existence of a video showing the end of the vehicle pursuit, to consult with an expert to see if the video could be "cleaned up," consult with an accident reconstruction expert, interview the women who called the police to the place where the chase started, investigate a motion to quash the enhancement paragraphs, or investigate the crash scene. (Docket Entry No. 14 at 4-10; Docket Entry No. 31 at 1-6). But Thorn neither presents nor points to evidence showing what the added investigation would have uncovered, how the added witnesses might have testified, or how his defense would have benefitted. *Nelson*, 989 F.2d at 850.

Thorn appears to argue that counsel should have done more to show that another vehicle hit Thorn's car before he crashed it into the house. (Docket Entry No. 14 at 4-10; Docket Entry No. 31 at 1-6). Thorn identifies no evidence that another car was involved, much less that it hit Thorn's car at the end of the chase. And Thorn does not challenge his counsel's investigation into the facts showing that he was speeding as he fled the police. Evidence of another vehicle's involvement would not change the fact of Thorn's speed in a residential area. Counsel's decision not to pursue an unproductive inquiry is reasonable. *See Strickland*, 466 U.S. at 689 ("the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy'"(citation omitted)).

Nor can counsel be faulted for failing to investigate to challenge the indictment as Thorn asserts he should have. As explained below, the basis Thorn asserts for challenging the indictment

is futile and unlikely to change the outcome. Even if some added investigation could have shown a basis for challenging the indictment, success would likely have been limited to having the State reindict Thorn, allowing his counsel to seek a brief continuance. *See* Tex. Crim. Pro. Art 28.10 (West 2014) (allowing 10 days for defense to respond to amended indictment). The decision not to investigate the possible basis to file a challenge that, if successful, would not reasonably have affected the outcome, is not to be second-guessed.

The record fails to show that defense counsel's investigation was deficient or that added investigation was reasonably likely to have altered the outcome. Thorn fails to show either deficient performance or prejudice as to this claim.

### 2. The Claim that Counsel Failed to Move to Quash the Indictment

Thorn alleges that his trial counsel "should have quashed the enhancement paragraphs due to their being void in nature." (Docket Entry No. 14 at 12-14). He appears to argue that the enhancements were invalid because they were not "related in nature" and because "habitual offender provisions do not apply when a defendant has been convicted of two or more felony offenses subsequently is convicted of a state jail felony." *Id.* Texas law is not as Thorn describes it.

Section 12.42(d) of the Texas Penal Code provides that a defendant convicted of a felony other than a state jail felony who has two or more prior felony convictions is subject to a sentence of 25 to 99 years. There is no statutory requirement that the convictions be related, and Thorn was convicted in this case of a third degree felony, not a state jail felony. *See* Judgment, Clerk's Record at 116. Therefore, Thorn's argument would not have been a valid basis to challenge the enhancement paragraphs, and counsel cannot be faulted for failing to bring a futile objection or motion. Thorn's argument also fails to take into account his plea of "true" to the enhancement

paragraphs. Because the record fails to show that counsel's performance was deficient or that it prejudiced Thorn, the claim cannot proceed.

### 3. The Claim that Counsel Failed to Object to Video Evidence

Thorn alleges that counsel "failed to properly object to withheld evidence of the video of the accident." (Docket Entry No. 14 at 13-14). Defense counsel stated that he did not receive the video showing the end of the high-speed chase and the crash that ended it until three days before trial. But the record does not support Thorn's allegation that this video was inadmissible. (Docket Entry No. 14 at 13-14). Even if the timing of the disclosure supported an objection, the likely remedy would have been a brief continuance, at best. The record does not show that a continuance would have favorably affected the outcome of his case. Thorn's arguments do not show deficient performance or prejudice on this claim.

### B. Thorn's Claim of a Defective Indictment

Thorn alleges that the State provided him inadequate notice to add a deadly weapon finding to the indictment. (Docket Entry No. 14 at 10-12, 14-15). An indictment is defective in the in the § 2254 context only if a valid conviction could not result from facts provable under the indictment. *Morlett v. Lynaugh*, 851 F.2d 1521, 1523 (5th Cir. 1988). If the highest state habeas appellate court rules on the sufficiency of the indictment, the federal habeas court cannot consider it. *McKay v. Collins*, 12 F.3d 66, 68 (5th Cir. 1994). By denying a petitioner's application for writ of habeas corpus, the Texas Court of Criminal Appeals necessarily, even if not expressly, finds that the indictment was sufficient. *Evans v. Cain*, 577 F.3d 620, 624 (5th Cir. 2009).

Thorn presented this claim before the Texas Court of Criminal Appeals, precluding this court's review. Moreover, the record shows that defense counsel received notice of the deadly-

weapon amendment to the indictment 12 days before trial, making it timely. As a result, the record fails to show that the state habeas court's denial of his claim was an unreasonable or contrary application of clearly established federal law, precluding further review.

### C. Thorn's Vagueness Claim Is Procedurally Barred and Meritless

Thorn alleges that Sections 1.07(17)(A) and (B) of the Texas Penal Code are unconstitutionally vague because "there is no statutory guidance to indicate when his use of the motor vehicle crossed the line to use of a deadly weapon." (Docket Entry No. 14 at 16-17). The respondent first argues that this claim is not exhausted under 28 U.S.C. § § 2254(b) and (c), because Thorn did not present it to the Texas Court of Criminal Appeals. The exhaustion requirement requires a petitioner to present a claim before the highest state court before seeking federal habeas relief for that claim. The petitioner must present the claim in a procedurally correct manner. *Sayre v. Anderson*, 238 F.3d 631, 634 (5th Cir. 2001). The record reveals that Thorn did not present the vagueness claim in his state habeas petition or in his petition for discretionary review. As a result, he has failed to exhaust this claim. The claim is procedurally barred, because Thorn could not raise the claim now under the Texas abuse-of-the-writ rules. *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991); TEX. CODE CRIM. PROC. art. 11.07 § 4.

In addition, the claim would fail on the merits. Section 1.07(B) of the Texas Penal Code defines "deadly weapon" as "anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." Assuming, without deciding, that the definition applies here, Thorn has failed to show that Sections 1.07(17)(A) and (B) are unconstitutionally vague. Statutes are void for vagueness because they fails to give a person of ordinary intelligence fair notice that the statute forbids the conduct. A person of ordinary intelligence would readily understand that driving

a car over 80 miles per hour in a 35 mile per hour zone in a residential area is capable of causing death or serious bodily injury. The record evidence, undisputed—Thorn agrees that he was going at least 60 miles per hour—is that Thorn crashed with such force that the pursuing officer lost track of the car and needed bystanders to point out where it was buried in the house. The impact was so strong that the car pinned a man inside the home for 45 minutes before he could be extricated, taken to the hospital, and treated for his severe injuries. The "deadly weapon" statute is not unconstitutionally vague on its face or as applied to this case. *See, e.g., Drichas v. State*, 175 S.W.3d 795, 798 (Tex. Crim. App. 2005) (vehicle became a "deadly weapon" when the defendant drove it recklessly in a police pursuit); *Stanul v. State*, 870 S.W.2d 329, 333-35 (Tex. App. – Austin 1994, pet. dism'd) ("deadly weapon" definition not vague when a floor falls under the definition of deadly weapon). The record defeats this claim because of failure to exhaust and procedural default, and because it fails on the merits.

### D. Thorn's Claim of Insufficient Evidence

Thorn's last claim is that the evidence was insufficient to support his conviction because he was not fleeing from an officer who was attempting to arrest or detain him. (Docket Entry No. 14 at 21-22). A federal habeas court must consider whether, viewing the evidence "in the light most favorable to the prosecution, any rational trier of fact could have found the existence of facts necessary to establish the essential elements of the offense beyond a reasonable doubt." *Jackson*, 443 U.S. at 318-19; *Dupuy v. Cain*, 201 F.3d 582, 589 (5th Cir. 2000). The court must refer to "the substantive elements of the criminal offense as defined by state law," *Jackson*, 443 U.S. at 324 n.16, and resolve credibility choices and conflicting inferences in favor of the verdict. *United States v. Cyprian*, 197 F.3d 736, 740 (5th Cir. 1999); *United States v. Nguyen*, 28 F.3d 477, 480 (5th Cir.

1994).

On direct appeal, the Texas court rejected Thorn's insufficient-evidence argument, as follows:

Sufficiency of the Evidence—Intent

> A person commits the offense of evading arrest, or detention, and causing serious bodily injury "if he intentionally flees from a person he knows is a peace officer ... attempting lawfully to arrest or detain him" and "another suffers serious bodily injury as a direct result of an attempt by the officer," from whom the person is fleeing, to apprehend the person while he is in flight. TEX. PENAL CODE ANN. § 38.04(a), (b)(2)(B) (Vernon Supp.2013). "A person commits a crime under [s]ection 38.04 only if he knows a police officer is attempting to arrest [or detain] him but nevertheless refuses to yield to a police show of authority." Redwine v. State, 305 S.W.3d 360, 362 (Tex. App.-Houston [14th Dist.] 2010, pet. ref'd); see also Hobyl v. State, 152 S.W.3d 624, 627 (Tex. App. - Houston [1st Dist.] 2004, pet. dism'd) ("[T]he accused must know that the person from whom he flees is a peace officer attempting to arrest or detain him.").
>
> Appellant argues that he could not have intentionally fled from Officer Alva because "at no point was he aware that a police officer was attempting to detain him." Appellant asserts that when he entered the Nissan that he had parked in the parking lot of the shopping center and drove away, he did not see Alva or any other police officer in the parking lot. He noted that he "drove at the same speed limit as the other cars . . . did not see any HPD police car following him, did not see any lights from a police car, and did not hear any police sirens."
>
> ...
>
> Here, although appellant testified otherwise, the record contains ample evidence demonstrating that he was aware that Officer Alva was attempting to detain him while he fled. Alva testified that when he arrived at the shopping center where the Nissan was located, he was wearing his police uniform and was in his patrol car, which had emergency overhead lights and was marked with police emblems. When Alva began making a u-turn to investigate the reported burglary being committed by appellant, appellant "screeched off through the parking lot" in the car. . . . Alva then activated his emergency equipment, which consisted of a siren and overhead flashing red, blue, and white lights. Appellant exited the parking lot, and Alva pursued him eastbound on Long Point Road. At one point during Alva's pursuit, he was only two car lengths behind appellant, with his siren and lights activated. . . . .
>
> Appellant, however, did not pull over and stop for Officer Alva. Instead, appellant "accelerated to a high rate of speed" and "weav[ed] in and out of vehicles." See Godfrey, 2014 WL 309381, at *3 (holding evidence sufficient to support

> conviction where defendant sped away in response to officer's shows of authority)
> . . . .
>
> When appellant made a left turn onto Antoine Drive in front of oncoming traffic, he caused several cars to come to "a screeching halt." Officer Alva described appellant's driving as "[v]ery erratic," "at a high rate of speed," and as "weaving in and out of traffic." Alva opined that appellant was driving approximately 60 miles per hour on Long Point Road and he accelerated to a minimum of 80 to 90 miles per hour. The posted speed limit was 35 miles per hour on both Long Point Road and Antoine Drive. Eventually, appellant lost control of the Nissan, went off the road through a chain-link fence and into the complainant's house. . . .
>
> . . . Viewing the evidence in the light most favorable to the verdict, we conclude that a rational trier-of-fact could have found beyond a reasonable doubt that appellant intentionally fled from a police officer who was attempting to arrest or detain him. . . . Accordingly, we hold that the evidence is sufficient to support appellant's conviction for evading arrest, or detention, and causing serious bodily injury.
>
> We overrule appellant's first issue.

*Thorn*, 2014 WL 3512811, at *3-5 (footnotes omitted). The record amply supports the Texas court's analysis and conclusion. The record also undermines the claim that no evidence shows that the officer was trying to detain Thorn. The officer testified that he intended to try to detain Thorn when he left the parking lot. Giving the appropriate weight and deference to "the responsibility of the trier of fact to fairly resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts," the trial evidence sufficiently supported Thorn's conviction. *Jackson*, 443 U.S. at 319. This claim fails.

## IV. Conclusion

For the reasons explained above, the respondent's motion for summary judgment is granted, Thorn's § 2254 motion is denied, and final judgment is entered by separate order.

Thorn has not requested a certificate of appealability, but a court may raise the issue on its own. *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000) ("It is perfectly lawful for district

court[]s to deny COA *sua sponte*. The statute does not require that a petitioner move for a COA; it merely states that an appeal may not be taken without a certificate of appealability having been issued.") A defendant may obtain a certificate of appealability either from the district court or an appellate court, but an appellate court will not consider it until the district court has denied the request. *See Whitehead v. Johnson*, 157 F.3d 384, 388 (5th Cir. 1988); *see also Hill v. Johnson*, 114 F.3d 78, 82 (5th Cir. 1997).

A certificate may issue only if the defendant has made a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A defendant "makes a substantial showing when he demonstrates that his application involves issues that are debatable among jurists of reason, that another court could resolve the issues differently, or that the issues are suitable enough to deserve encouragement to proceed further." *Hernandez v. Johnson*, 213 F.3d 243, 248 (5th Cir.), *cert. denied*, 531 U.S. 966 (2000). Thorn has not made a "substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), and he is not entitled to a certificate of appealability.

## V. Order

The respondent's motion for summary judgment, (Docket No. 33), is granted, Joseph Benjamin Thorn's petition for a writ of habeas corpus, (Docket No. 1), is denied, and no certificate of appealability is issued. Final judgment is entered by separate order.

SIGNED on August 1, 2017, at Houston, Texas.

_____
Lee H. Rosenthal
Chief United States District Judge